RECEIVED
IN ALEXANDRIA, LA
APR 27 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JOSEPH L. JAMES<br>　　LA. DOC #157434 | CIVIL ACTION NO. 1:10-CV-0092 |
| VS. | SECTION P |
| | JUDGE TRIMBLE |
| LT. HERZOG, ET AL. | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

　　*Pro se* plaintiff Joseph L. James, proceeding *in forma pauperis*, filed the instant civil rights complaint (42 U.S.C. §1983) on January 13, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the David Wade Corrections Center (DWCC), Homer, Louisiana, but he complains that while he was incarcerated at the Rapides Parish Detention Center (RPDC) in Alexandria, officials with the Rapides Parish Sheriff's Office (RPSO) denied him the opportunity to participate in their Work-Release program because of his sexual orientation.

　　He sued Lt. Hertzog, Warden Gary Moore, Chief Deputy Darrell Guillory and Assistant Warden Labrain. In his original complaint he prayed for injunctive relief (ostensibly an order directing the defendants to allow him to participate in the

Work-Release Program) and money damages for mental anguish. [Doc. #1, ¶V] In his first amended complaint filed on February 2, 2010 plaintiff clarified his prayer for relief and asked "To participate in the Work Release Program. To over rule Lt. Hertzog's decision. To establish the Constitutional violation of Joseph Louis James Human Rights for mental anguish no less than $250,000.00 for being subjected to cruel and unusual punishment." [Doc. #4, ¶V] In his second amended complaint filed on March 22, 2010, plaintiff asked, "... to participate in the Work Release Program when DOC makes the final ruling concerning eligibility of the opportunity [ ] to do so for offenders. Plaintiff claims he should be granted all relief desired in the complaint. Also compensatory damages, punitive damages, injunctive relief." [Doc. #7 at p. 20]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief can be granted.

*Background*

Plaintiff is an inmate in the custody of the LDOC. In 2008

he was incarcerated at the RPDC #II where he served as the trusty supervisor of the day shift laundry. [Doc. #7, p. 6] At some point in time it appears he lost that prison job and was transferred to the RPDC #III. [*Id.*] On October 2, 2008 he submitted an Inmate Request Form directed to the Work Release Program which stated –

> I need to know now due that I have an aggravated charge will I be eligible for work release in January 2009. I need to know what are my options so I can determine my goals now that I have this delay. If not I would like to be placed on the earliest bus shipment to the Department of Public Safety as soon as possible so I can do this time with the benefit of all benefits eligible for me. I would like to take up a college course and seek the proper medical treatment for my mental stability. Place take notice to my request.[Doc. #7, Exhibit 1][1]

In her reply on the same date, Lt. Hertzog replied, "Stop! Answered - Reapply in Jan. 2009 & wait for DOC's response!"

[*Id.*]

Plaintiff apparently heeded that advice and reapplied for Work Release in January 2009. On January 29, 2009, Lt. Hertzog advised that plaintiff's application was denied "Based on DOC Guidelines dealing with Homosexuality..." and, "Due to your

---

[1] While not stated, it appears that plaintiff lost his trusty status and prison job as a result of some "aggravated" prison disciplinary charge that was lodged against him. Further, it appears that plaintiff obtained the relief he sought in this grievance as he was ultimately transferred to the DWCC where he remains incarcerated.

3

disruptive behavior at DC-2 they don't want you back for Work Release." [Doc. #7, Exhibit 2]

On or about February 2, 2009 plaintiff submitted an Inmate Grievance charging Lt. Hertzog, Warden Moore, and Assistant Warden Labrain with discrimination and conspiracy. According to plaintiff, "Lt. Hertzog manipulated the system guidelines to cause an act of discrimination against me. Conspired with 'They' of DC II to single me out to not be eligible to participate in the Work Release Program to improve my rehabilitation status..." He requested "Transfer as trustee allowed to be eligible to be a participant of the work release program, monetary relief (trauma reasons)." [Doc. #7 Exhibit 3] In an addendum to the grievance plaintiff requested production of any "documentation" to substantiate the disruptive behavior alleged by Lt. Hertzog. [*Id.*]

On February 27, 2009 Lt. Hertzog rejected the grievance as unfounded. The document (which is not entirely legible) provided the following reasons, "Following the Guidelines for this program, your behavior falls on [illegible] of the Selection Criteria. While you were at DC-2 as trusty in the laundry your behavior [illegible] became disruptive. (Overt aggressive pattern of homosexual behavior.)" Plaintiff then requested

4

review of his grievance and this response by the Warden. [Doc. #7, Exhibit 4]

On March 18, 2009 plaintiff sent an Inmate Request Form to Warden Moore reminding him of this appeal. The Warden replied that he did not receive the grievance. [Doc. #7, Exhibit 5] On March 20, 2009 plaintiff submitted another grievance to Warden Moore stating, "... I have been discriminated against and denied work release for prejudice reasons..." [Doc. #7, Exhibit 6] On March 20, 2009, Warden Moore determined that plaintiff's grievance was unfounded noting, "I have reviewed your complaint as well as your records here and from DC 2 (work release). Based on this[,] this grievance is classified as unfounded." [Doc. #7, Exhibit 7] On March 23, 2009 plaintiff appealed to the Sheriff claiming, "I desire the fair opportunity to be a participant of work release without having to be prejudiced because of race, religion, life style, gender, sex." [Id.]

On March 30, 2009 plaintiff was transferred to Catahoula Correctional Center. [Doc. #7, p. 4] On April 6, 2009 the Sheriff's chief deputy, Darrell Guillory, rejected the grievance as unfounded based on his review of the statements given. Guillory agreed that plaintiff's behavior "compels us to follow DOC Guidelines in this matter." [Doc. #7, Exhibit 8]

On April 7, 2009, plaintiff filed a complaint in the Nineteenth Judicial District Court. [Doc. #7, p. 32] Sometime between April and October 21, 2009 plaintiff was transferred to the David Wade Correctional Center. On December 2, 2009 he was notified that his suit was dismissed without prejudice for lack of subject matter jurisdiction. [*Id.*, pp. 44-46; 52-53]

Plaintiff then filed the instant suit on January 13, 2010.

### *Law and Analysis*

*1. Screening*

When a prisoner files a complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to review the complaint as soon as is feasible and to dismiss the case if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C.A. §§ 1915 and 1915A; see also 42 U.S.C.A. § 1997e(c) (providing that a district court shall on its own motion or the motion of any party dismiss a complaint by a prisoner regarding prison conditions if the court is satisfied the complaint is frivolous, malicious, falls to state a claim upon which relief may be granted, or seeks monetary relief from an immune

6

defendant).

A claim is frivolous if it has no arguable basis in law or fact. <u>Nietzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted).

A civil rights plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. <u>Schultea v. Wood</u>, 47 F.3d 1427, 1433 (5th Cir.1995).

Plaintiff's complaints and exhibits present the best case which could be presented by plaintiff under the circumstances. The undersigned is convinced that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, and, giving plaintiff the benefit of every doubt, the undersigned concludes, for the reasons stated hereinafter, that his complaint should be dismissed with prejudice.

## 2. *Discrimination and Equal Protection*

Plaintiff claims that he was the victim of discrimination

7

based upon his sexual orientation. Neither the Supreme Court nor the Fifth Circuit "has recognized sexual orientation as a suspect classification" or protected group. Nevertheless, governmental action may violate the equal protection rights of a homosexual person "if it disadvantages homosexuals for reasons lacking any rational relationship to legitimate governmental aims." Johnson v. Johnson, 385 F.3d 503, 532 (5th Cir.2004), citing Romer v. Evans, 517 U.S. 620, 631-32, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996)("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.") (emphasis supplied)

Equal protection challenges raised by prisoners must be scrutinized so as to ensure that prison officials are afforded the necessary latitude and discretion to operate their facilities in a safe and secure manner. Even arguably disparate treatment – so long as it is reasonably related to legitimate penological interests – may survive in the face of a Fourteenth Amendment Equal Protection challenge. Veney v. Wyche, 293 F.3d 726, 732 (4th Cir.2002). Federal courts simply cannot "... disregard the special difficulties that arise in the prison context..." and must defer to the decisions of prison

administrators who are charged with making difficult judgments concerning prison operations. Smith v. Bingham, 914 F.2d 740, 742 (5th Cir.1990) Prisoners do not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system. *Id*. Legitimate governmental aims obviously include the preservation of order in prisons.

Plaintiff argues that he was terminated from his trusty job and denied the opportunity to participate in work-release solely on the basis of his sexual orientation; however, upon closer inspection, it appears that the defendants based their decision not on plaintiff's sexual orientation, but rather because his behavior "became disruptive" when he displayed "... overt/aggressive homosexual behavior." [Doc. #7, Exhibit 4] Plaintiff denies such behavior asserting that he was never charged with a rules violation. (As noted above, however, plaintiff, in his original grievance, implied that he had been charged with or convicted of some "aggravated" rules violation. See fn. 1.) In any event, the fact that he was not charged with a disciplinary rules violation is irrelevant; that his very presence was disruptive is a sufficient and legitimate penological objective to justify the termination of his trusty status and the denial of work release.

In short, plaintiff fails to state a claim with regard to his discrimination complaint.

### 3. *Work-Release and Due Process*

Plaintiff also implies that the defendants denied him due process when they revoked his trusty status and denied him work release placement. Plaintiff has neither a liberty nor property interest in the work release program and therefore his due process claims are frivolous.

In <u>Welch v. Thompson</u>, 20 F.3d 636 (5th Cir. 1994), the Fifth Circuit determined that La. R.S.15:1111, the statute which authorizes the LDOC's work-release program – entrusts the actual operation of the work release program to the LDOC. The court further determined that the statute does not dictate to the LDOC who it must put on work release. In short, the Fifth Circuit has held that "...La. R.S.15:1111 <u>does not create a liberty interest</u> subject to the Due Process Clause." <u>Welch v. Thompson</u>, 20 F.3d 636, 644 (5th Cir. 1994). The statute is virtually identical to La. R.S.15:711 which authorizes Parish Sheriffs to establish work-release programs. Indeed, the latter statute also provides, "<u>Each sheriff</u> shall establish written rules for the administration of the work release program and <u>shall determine those inmates who may participate in the release</u>

program..." Since the statutes are virtually identical in substance, it is safe to conclude that R.S.15:711, like its LDOC counterpart, R.S.15:1111, also does not create a liberty interest subject to the Due Process Clause.

Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that his rights to due process have been violated.

To the extent that plaintiff also implies that he was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact. In Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it. Rather, he must "have a legitimate claim of entitlement to it." Id. (emphasis supplied). Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific

11

benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit..." <u>Evans v. City of Dallas</u>, 861 F.2d 846, 848 (5th Cir. 1988). Plaintiff can point to no rule or understanding which entitles him to participate in the program. Indeed, the Fifth Circuit has previously held that prisoners have no property interest work-release employment. <u>Bulger v. U.S. Bureau of Prisons</u>, 65 F.3d 48 (5th Cir.1995). Plaintiff is not constitutionally entitled to participate in the Louisiana work-release program and therefore to the extent that he implies that he was denied either a liberty interest or a property right in violation of the Due Process Clause, such claims are subject to dismissal as frivolous.

### 4. *Relief Requested*

Finally, even if plaintiff was the victim of discrimination, and, even if he was deprived of liberty or property without due process, he is not entitled to the relief he now seeks.

#### a. *Injunctive Relief*

First, plaintiff seeks injunctive relief – he asks the

Court to "overturn" Lt. Hertzog's decision and to be allowed to participate in the Work Release Program. Plaintiff, however, is no longer in the physical custody of the Rapides Parish Sheriff and these defendants – Hertzog, Moore, and Labrain – no longer have the authority to make a determination concerning plaintiff's eligibility to participate in work release or any other prison program. Plaintiff is now, and has been since prior to filing this suit, in the physical and legal custody of the LDOC. His eligibility to participate in the LDOC's work release program is now governed by the provisions of La. R.S.15:1111 and is subject to the sound discretion of the Department.

Finally, as noted above (see fn. 1) plaintiff, in his original grievance, requested transfer to an LDOC facility. He has obtained that relief and therefore his requests for injunctive relief are moot.

### b. *Compensatory Damages for Mental Anguish*

Second, plaintiff seeks compensatory damages for mental anguish. Title 42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act of 1996. Under the current version of the statute, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." Crawford-el v. Britton, 523

U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. Harper v. Showers, 174 F.3d 716, 719 (5th Cir.1999) (citing Siglar v. Hightower, 112 F.3d 191 (5th Cir.1997).

Plaintiff has not alleged that he suffered from any physical injury, and, indeed, one cannot imagine any physical injury resulting from the denial of his ability to participate in the work release program. Therefore plaintiff's claim for monetary damages is legally without merit (see Herman v. Holiday, 238 F.3d 660, 666 (5th Cir.2001)) and should be dismissed as frivolous.

### c. *Punitive Damages*

Finally, plaintiff prays for punitive damages. While §1997e(e) bars his claims for compensatory damages, it does not bar his request for punitive damages. Hutchins v. McDaniels, 512 F.3d 193, 198 (5th Cir.2007). Nevertheless, punitive damages may be awarded in an action based on § 1983 only if the defendants' conduct was shown to be motivated by evil motive or intent, or when it involved reckless or callous indifference to the federally protected rights of others. Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983); Hale v. Fish, 899 F.2d 390, 404

(5th Cir.1990). The latter standard requires a recklessness in its subjective form, i.e., a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." <u>Williams v. Kaufman County</u>, 352 F.3d 994, 1015 (5th Cir.2003). Reckless or callous indifference "pertain to the [defendant's] knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." <u>Kolstad v. American Dental Association</u>, 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (interpreting 42 U.S.C. § 1981a(b)(1)).

An award of punitive damages is "a discretionary moral judgment" that the defendant has engaged in conduct that is so reprehensible that it warrants punishment. <u>Smith v. Wade</u>, 461 U.S. 30, 52, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Plaintiff's complaints and exhibits do not support a claim for punitive damages; nothing herein suggest evil intent or callous indifference on the part of the defendants. In short, accepting all of plaintiff's allegations as true, he has not shown that he is entitled to punitive damages. Therefore, with respect to his prayer for relief, plaintiff fails to state a claim for which relief may be granted.

*Conclusion and Recommendation*

Plaintiff's complaints and exhibits do not establish that he was the victim of discrimination; they do not establish a due process violation since plaintiff has neither a liberty interest nor property interest in work-release; finally, even if plaintiff could establish the violations he complained of, he is not, as a matter of law, entitled to injunctive relief, compensatory damages for mental anguish, or punitive damages. Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the**

date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglas v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Alexandria, Louisiana, April 26, 2010.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE